**NEW SOUTH INDUSTRIES, INC. et al.**

v.

**APACHE GROUNDING CORPORATION, et al.**

No. 3–86–0810.

United States District Court, M.D. Tennessee, Nashville, Division.

Aug. 19, 1987.

---

Rachel L. Steele, Farris, Warfield & Kanaday, Nashville, Tenn., Phillip S. Banks, III, West, Crawford & James, Winston-Salem, N.C., for plaintiffs.

Mark J. Patterson, Manier, Herod, Hollabauch & Smith, P.C., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

In this patent case, defendants have moved for partial summary judgment on the patent infringement claims of the plaintiffs, arguing that the patents are invalid and that the claim against them is not ripe. For the reasons explained below, the Court denies defendants' motion in its entirety.

Plaintiffs now control United States Patent number 4,189,356 ('356 Patent), as assignee of the patent. They instituted this action against the defendants on September 16, 1986 alleging patent infringement, inducement to infringe, misappropriations of trade secrets, breach of contract, unifair and deceptive trade practices, and interference with contract.

### I. Factual Background

On December 17, 1976, the inventors of six method claims and the resulting apparatus, copper plated ground rods, filed a patent applications pursuant to 35 U.S.C. § 111. The process and apparatus were discovered in January, 1976. The patent examiner subsequently determined on March 14, 1977 that the applications contained two distinct inventions—the method claims and apparatus. Pursuant to 37 C.F.R. § 1.141 and 1.142, the examiner required the applicants to restrict and elect which inventions would move toward final action. On April 12, 1977, the inventors elected to proceed with the apparatus claim, while preserving the non-elected method claim "without prejudice."

On November 17, 1977, the examiner rejected the apparatus claim and specified, pursuant to 35 U.S.C. § 133, that there would be a shortened statutory response period of 90 days. This period began to run on November 21, 1977, the day notification of the rejection was sent to the inventors. See 35 U.S.C. § 133.

On the last day of the response period (February 21, 1978), the inventors' patent attorney deposited a divisional application in the United States mail, ostensibly pursuant to 37 C.F.R. § 1.6. This application abandoned the apparatus claim and stated an intention to revive the earlier non-elected six method claims. See Exhibit M to Plaintiff's Response to Defendants' Supplemental Motion for Partial Summary Judgment. The patent lawyer included a certifi-

cate of mailing, pursuant to 37 C.F.R. § 1.8.[1]

The Patent and Trademark Office (PTO) stamped the divisional application as officially arriving on February 27, 1978, six days *after* it was mailed and six days *after* the time limit for response set by the patent examiner. However, the examiner, when reviewing the applications, took *no* action detrimental to the patentees. The divisional application proceeded toward final action. The PTO rejected the six method claims in an action dated May 11, 1978 and gave a three-month response period. The applicants timely responded with an appeal, and ultimately were granted a patent on February 19, 1980.

Defendants argue that the use of the mailing procedure was frankly contrary to a PTO rule then in effect; that as a result the patent applicants did not respond to the PTO action within the required time period; that the applicants thereby must be deemed to have "abandoned" their application; and that the divisional application should be assigned not the original application date of December 17, 1976 but rather the receipt date of February 27, 1978. If the later date were applicable to the patent, it would lack validity because, by the use of the patented subject matter that admittedly began in January 1977, the invention would have been "in public use ... in this country" more than one year "prior to the date of the application for patent," 35 U.S.C. § 102(b), and therefore would not be eligible for a patent. 35 U.S.C. § 102.

## II. Discussion

A divisional application which results solely from a PTO requirement for restriction and election is, unless the first application either receives a patent or is abandoned, "entitled to the benefit of the filing date of the first application." 35 U.S.C. §§ 120, 121.

Plaintiffs assert that the application in this case was timely because it was mailed on the last day of the response period pursuant to the following regulation:

*§ 1.8 Certificate of Mailing*

(a) Except in the cases enumerated below, papers and fees required to be filed in the Patent and Trademark Office within a set period of time will be considered as being timely filed if (1) they are addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231, and deposited with the United States Postal Service with sufficient postage as first class mail prior to expiration of the set period and (2) they are accompanied by a certificate stating the date of deposit (see forms §§ 3.55 and 4.33). The person signing the certificate should have reasonable basis to expect that the correspondence would be mailed on or before the date indicated. The actual date of receipt of the paper or fee will be used for all other purposes. This procedure does not apply to the following:

. . . . .

(i) The filing of patent applications;

. . . . .

37 C.F.R. § 1.8 (effective date November 1, 1976).

The Manual of Patent Examining Procedures (MPEP) § 512 implements C.F.R. § 1.8. Defendants correctly state that use of a stamped certification otherwise authorized by 37 C.F.R. § 1.8 is expressly disallowed for a divisional application by MPEP § 512:

It should be noted that the mailing of a paper such as form 3.54 for the purpose of obtaining a continuation or *division application* under 37 C.F.R. 1.60 is *excluded* from the certificate of mailing practice under 37 C.F.R. 1.8(a)(i) since it is considered to be the filing of a patent application.

MPEP § 512 (rev. 57 Oct. 1977) (emphasis added).

---

1. The certificate-of-mailing procedure was relatively new at this time. The new rule was enacted because of delays of papers deposited in the United States mail getting to Washington. *See* 41 Fed.Reg. 43731 (Oct. 4, 1976).

Plaintiffs clearly did not comply with this section.[2]

### A. The Regulatory Framework

■ 35 U.S.C. § 133 provides:

Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable.

At the time of the PTO events at issue, 37 C.F.R. § 1.135 provided:

.    .    .    .    .

(c) When action by the applicant is a bona fide attempt to advance the case to final action, and is substantially a complete response to the examiner's action, but consideration of some matter or compliance with some requirement has been inadvertently omitted, opportunity to explain and supply the omission may be given before the question of abandonment is considered.

.    .    .    .    .

Also at the relevant time, 37 C.F.R. § 1.137 provided:

An application abandoned for failure to prosecute may be revived as a pending application if it is shown to the satisfaction of the Commissioner that the delay was unavoidable. A petition to revive an abandoned application must be accompanied by a verified showing of the causes of the delay, by the proposed response unless it has been previously filed, and by the petition fee.

Upon full consideration of the arguments of the parties and of the regulatory scheme governing the actions of the '356 patentees and the PTO, the Court arrives with conviction at the conclusion that this patent should not be invalidated. This reasoning is guided by statutory construction, by principles of fairness, by demonstrated Congressional intent, and by the policies underlying the Constitutionally-authorized patent system.

The statute makes obvious provision for the Commissioner to exercise discretion to excuse technical time lapses that might otherwise result in patent abandonment. The two cited C.F.R. sections further specify this broad directive by providing mechanisms to avoid abandonment or to revise an application deemed abandoned—by excusing inadvertent and unavoidable delays that occur in the context of otherwise "bona fide" and "substantially complete" efforts to comply with the regulatory framework. The emphasis is equitable.

It is true that the MPEP, an internal procedure manual without the force of law, categorically rules out use of the § 1.8 mailbox-timing rule for divisional applications. This categorical internal policy, however, is subject to the superior statutory and regulatory mitigating provisions that broadly empower the Commissioner to excuse certain delays. Failure to comply with MPEP § 512, therefore, cannot by itself invalidate a patent unless the applicant also is ineligible for "excusable delay."

### B. Fairness

■ The structure of the statute and of the attendant regulations contemplates that an applicant who misses a deadline will have an opportunity to invoke these

2. Plaintiffs have argued that its February 21, 1978 communication with the PTO was a hybrid "response" to the PTO action of November 21, 1977, in that it served both to (1) abandon the previously rejected claim and (2) institute a divisional application for the reserved and previously non-elected claim. Even if subresponse (2) is not an appropriate paper to be filed under 37 C.F.R. § 1.8, subresponse (1) would be; plaintiffs thus argue that, because the same piece of paper contained *both* assertions, subresponse (2) also should be considered as properly filed under § 1.8 and therefore be entitled to the timing rule provided by § 1.8.

Because the Court decides this motion on the basis of the "excusable delay" clause of 35 U.S.C. § 133 and related rules and policies, it expresses no opinion on the merits of this inventive "umbrella" argument.

mitigating mechanisms.[3] If the PTO had enforced MPEP § 512 in 1978 to deem plaintiffs' first application abandoned, plaintiffs would have had the chance to seek mitigation via 37 C.F.R. §§ 1.135 or 1.137. Now they do not.

The Court takes cognizance that the Commissioner, acting through the patent examiner, in 1978 took no action to enforce section 512 against the plaintiffs. While this decision may not be entitled to the usual technical presumption of correctness ordinarily operative in patent litigation,[4] the Court nevertheless accords deference to the broad discretion delegated to the Commissioner by Congress in 35 U.S.C. § 133. The Commissioner, in effect, gave plaintiffs *sub silentio* the benefit of the "excusable delay" provisions.

Apart from the inequity,[5] that a retroactive invalidation of the '356 patent would work on the plaintiff-patentees, the Court observes that their apparent error of using the mailbox technique appears to have been an understandable and inadvertent one, given the fact that, at the time in question, MPEP § 512 was fewer than six months and 37 C.F.R. § 1.8 fewer than 16 months

in effect. The language in section 512 that barred divisional applications from the mailbox rule, moreover, is placed in a rather inconspicuous location in a somewhat lengthy text titled "Office Procedure" and subtitled "Processing Areas." *See supra* note 1.

Moreover, a rigid attitude toward procedural default would be contrary to Congressional intent. Congress made clear its view that patent applicants who inadvertently miss deadlines should be given leeway by enacting a bill in 1982 that allowed applicants a window period to revive claims lost due to specified procedural defaults. *See* 37 C.F.R. § 1.137(b) (codifying the enactment) (discussed in *Vincent,* 230 U.S. P.Q. at 623).

### III. Conclusion

In sum, the Court views defendants' position as asking either for strict enforcement of the MPEP rule without regard to the statute and regulations that it implements, or as seeking enforcement of the prohibitory language in 35 U.S.C. § 133 without regard for its mitigating component. Defendants' narrow view is contrary to the

---

**3.** For this reason, *Vincent v. Mossinghoff,* 230 U.S.P.Q. 621 (D.D.C.1985), cited by defendants, is of no persuasive value in this case. In *Vincent* the district court's task was to review a decision *by the PTO* that applicants had abandoned their application by failing to meet deadlines. The *Vincent* applicants had had the full range of mitigation procedures available to them; the district court was in the posture of reviewing an administrative decision by the PTO to assess whether it was arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A). *Id.* at 623. In the instant case, this Court is being asked to review *de novo* and to reverse an apparent decision *by the PTO* that an applicant's procedural default was excusable. *Cf. Struthers Patent Corp. v. Nestle Co.,* 558 F.Supp. 747, 802–04 (D.N.J.1981):

> [A] reviewing court should [not] hold a patent invalid when an applicant files, within time, an amendment which is at least colorably responsive to the examiner's action and when the Patent Office itself decides to treat the amendment as sufficient so as not to require a finding of abandonment. To rule otherwise would require the reviewing court to involve itself in the minutiae of Patent Office proceedings and to second-guess the Patent Office at every turn.

*Id.* at 803.

**4.** *See* 35 U.S.C. § 282. In *Chicago Rawhide Manufacturing Co. v. Crane Packing Co.,* 523 F.2d 452 (7th Cir.1975), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976), then-Judge Stevens explained that the usual procedural burden of overcoming a presumption of patent validity becomes strengthened when the PTO has had the benefit of considering prior art. The reason for the strengthened presumption, rebuttable only by clear and convincing evidence, is "deference due to the technical expertise possessed by the Patent Office and not generally possessed by federal judges." *Id.* at 458.

**5.** The Court also notes that some defendants in this case, far from being rival inventors at the time of the patent application period, were actually employees of the plaintiff. This is not a case, thus, in which rival inventors, but for laxity on the PTO's part, might have leaped into a void left by the plaintiffs and pursued their own invention. Rather, it is a case in which the plaintiff-patentees, who have relied on the validity of the patent and on the decisions made by the PTO for the last eight to ten years, would be stripped of their patent and their reliance interests by judicial reversal of facially valid PTO action.

principles of statutory construction, of fairness, and of the policies that underlie the patent process. To state their proposition is to suggest its refutation.

■ Defendants' motion [6] and supplemental motion for partial summary judgment on the patent infringement claims are denied.

---

**6.** Although this Memorandum has dealt at length with defendants' supplemental motion, the defendants originally urged the Court to dismiss for want of subject matter jurisdiction because use of the arguably infringing process had not begun. A merely *threatened* infringement, however, satisfies this requirement for ripeness. *See Robin Products Co. v. Tomecek,* 465 F.2d 1193 (6th Cir.1972); *see also Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (Article III requires "actual or threatened injury"). This motion, too, is without merit.